NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEERAV DUDHWALA,<br><br>    Plaintiff,<br><br>    v.<br><br>CHOICE HOTELS INTERNATIONAL SERVICES CORPORATION D/B/A CHOICE HOTELS,<br><br>    Defendant. | Civil Action No. 22-873 (EP) (MAH)<br><br>OPINION |

**PADIN**, District Judge.

    Plaintiff Neerav Dudhwala, a New Jersey resident, sued Defendant Choice Hotels International Service Corporation ("Choice"), a Delaware Company headquartered in Maryland, for employment discrimination. Choice moves to dismiss Plaintiff's Complaint for lack of personal jurisdiction and for failure to state a claim. Plaintiff opposes. For the reasons below, this Court grants Choice's motion in part, declines to exercise personal jurisdiction, and transfers the action to the District of Maryland.

**I.    BACKGROUND**

    Choice[1] is a Delaware corporation that maintains its headquarters in Rockville, Maryland. Compl. ¶ 1. On October 12, 2020, Choice Senior Vice President Janis Cannon hired Plaintiff as the Director of Ascend Hotel Collection, a Choice sub-brand. *Id.* ¶¶ 3, 4. Plaintiff's offer letter

---

[1] Plaintiff sued "Choice Hotels International Services Corporation d/b/a Choice Hotels." Compl. ¶ 1. Choice explains that the entity which employed Plaintiff (and therefore the proper defendant) is "Choice Hotels International Services Corp.," a subsidiary of Choice Hotels International. DE 4.

for that position contained a requirement that he move to Rockville, Maryland, by August 31, 2021.  *Id.* ¶ 7.

On April 13, 2021, Cannon inquired about Plaintiff's relocation efforts.  *Id.* ¶ 8.  Plaintiff responded that Rockville "had a difficult housing market, and that he was still looking" for an affordable house that could fit his family of four.  *Id.* ¶ 9.  He maintained that he was "on target to relocate by August 31, 2021, by renting space from his sister."  *Id.*  Cannon expressed concern that this would violate the terms of Plaintiff's offer letter.  *Id.*

On May 7, 2021, Plaintiff relayed his relocation plan to Human Resources Director Beth McMahon.  *Id.* ¶ 10.  McMahon, like Cannon, expressed concern that his plan violated the offer letter's requirement to relocate Plaintiff's family.  *Id.* ¶ 11.  On May 13, 2021, at Choice's Rockville office, Cannon again expressed her concern about Plaintiff's plan, "concerned about [Plaintiff's] commitment to [Choice]." *Id.* ¶ 12.

On May 20, 2021, Cannon and McMahon met virtually with Plaintiff.  *Id.* ¶ 13.  McMahon told Plaintiff that his relocation plan did not comply with the offer letter.  *Id.*  Plaintiff argued that the letter did not mention his family.  *Id.*

In June 2021, Choice introduced a hybrid work model permitting some remote work for employees who were already based in Rockville.  *Id.* ¶ 14.  On June 8, 2021, at an in-person meeting in Maryland with Cannon and McMahon, McMahon complimented Plaintiff's work and extended his relocation deadline one month, subject to the requirement that Plaintiff relocate at the same time as his family.  *Id.* ¶ 16.  Plaintiff's failure to do so, McMahon stated, would violate the offer and be deemed a voluntary resignation.  *Id.*  Plaintiff, again reminding McMahon of the difficult housing market, adhered to his original relocation plan.  *Id.*  McMahon responded that Plaintiff should submit his resignation by the next day.  *Id.*

2

Plaintiff declined.  *Id.* ¶ 17.  At a June 11, 2021 Zoom meeting, McMahon and Cannon "advised Plaintiff that they don't care what he does with his family" and were assembling a severance package for Plaintiff.  *Id.* ¶ 18.

On June 14, 2021, Plaintiff complained about McMahon's "harassment" to Choice Chief HR Officer Patrick Cimerola.  *Id.* ¶ 20.  On June 18, 2021, after a Zoom meeting with Cimerola, Cimerola offered Plaintiff a two-month severance package.  *Id.* ¶¶ 20-21.  By the end of June, Choice ended Plaintiff's employment.  *Id.* ¶ 20.  Throughout his employment, Plaintiff was never disciplined.  *Id.* ¶¶ 6, 23.

Since Plaintiff's termination, he has remained unemployed.  *Id.* ¶ 24.  Choice's treatment of Plaintiff resulted in "anxiety, humiliation, stress, and depression" for which he sought mental health treatment.  *Id.* ¶¶ 25-26.

Plaintiff filed the Complaint in New Jersey state court, alleging one count: violation of the New Jersey Law Against Discrimination ("NJLAD"), specifically disparate treatment based upon marital status.  *Id.* ¶ 28, *et seq.*  Plaintiff seeks back pay, front pay, punitive damages, and fees and costs.  *Id.* at p. 7.  On February 17, 2022, Choice removed the matter to this Court on diversity grounds.  DE 1.

Choice now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (6) (DE 6), arguing that this Court cannot exercise personal jurisdiction and that the Complaint fails to state a claim.  Because the Court agrees with Choice's personal jurisdiction argument, the Court will grant the motion as to that argument, deny the remaining arguments without prejudice, and transfer the matter to the District of Maryland.

**II.     LEGAL STANDARD**

Rule 12(b)(2) permits a party to move to dismiss a case for lack of personal jurisdiction. The plaintiff bears the burden of demonstrating "sufficient facts to establish that jurisdiction is proper." *Mellon Bank PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Generally, a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). But when a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

Thus, to withstand a Rule 12(b)(2) motion, a plaintiff may not rely on the pleadings alone, as it "is inherently a matter which requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). In conducting this jurisdictional analysis, district courts may rely upon the parties' declarations for relevant factual support. *See, e.g., Shnayderman v. Cell-U-More, Inc.*, Civ. No. 18-5103, 2018 WL 6069167, at *11 (D.N.J. Nov. 20, 2018) (using information from the plaintiff's complaint and declaration to determine that the defendant did not travel to the forum state or solicit a loan from the plaintiff in the forum state); *Pausch LLC v. Ti-Ba Enters.*, Civ. No. 13-6933, 2014 WL 5092649, at *6-7 (D.N.J. Oct. 8, 2014) (using declarations from both parties to conclude that contacts with the forum were insufficient for personal jurisdiction).

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state" where the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotation marks omitted). The inquiry involves two steps:

looking to the state requirements, then to the constitutional requirements. *IMO Indus., Inc. v. Kiekart AG*, 155 F.3d 254, 259 (3d Cir. 1998).

In New Jersey, the two steps collapse into one because New Jersey's long-arm jurisdiction law provides that courts may "exercise jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 72 (2010), *rev'd on other grounds sub nom., J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). Thus, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

Once a plaintiff presents a *prima facie* case of personal jurisdiction by establishing minimum contacts, the burden shifts to the defendant. *Carteret Sav. Bank*, 954 F.2d at 150 (citing *Burger King*, 471 U.S. at 477). When sufficient minimum contacts have been established, jurisdiction is "presumptively constitutional." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 324 (3d Cir. 2007). In turn, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

### III.     DISCUSSION

Personal jurisdiction can be general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 317); *see Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009) ("Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction."). Choice correctly argues that it is not subject to either.

General jurisdiction requires only continuous and systematic contacts, and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so

substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 318). Specific jurisdiction exists when the defendant's activities in the forum state: (1) were "continuous and systematic" and (2) gave rise to the plaintiff's claims. *Id.*

Choice first argues that there is no general jurisdiction. To establish general jurisdiction, a plaintiff must show that the quality and nature of a defendant corporation's contacts with New Jersey are so continuous and systematic as "to render the [foreign corporation] essentially at home in the forum state ... *i.e.* comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 131–33 n.11 (2014) (citations omitted). Therefore, the "paradigm bases for general jurisdiction" over a corporation are its "place of incorporation and principal place of business." *Id.* 137. Only in an "exceptional case," where a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State," can general jurisdiction be found. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (finding general jurisdiction in Ohio where war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio)).

This is not, as Plaintiff argues, an "exceptional case." The Complaint acknowledges that Choice's principal place of business is Maryland. ¶ 1. Plaintiff also does not dispute that Choice is incorporated in Delaware. Choice Br. 13.

The Complaint does allege that Choice "conducts business throughout New Jersey, including in Newark." ¶ 2. In opposition, Plaintiff also argues that Choice "maintains numerous hotels, employs numerous workers working at those hotels,…presumably maintains New Jersey

bank accounts and files state taxes here," and maintains a Trenton "Home Office" with at least a dozen employees.  Pl. Br. 17-18.

As Choice argues, however, this is not sufficient to establish general jurisdiction—even far more substantial business activity has been rejected as insufficient.  *BNSF Ry. Co.*, 137 S. Ct. at 1559 (holding that defendant's "over 2,000 miles of railroad track and more than 2,000 employees in Montana" did not render it "essentially at home" there).  Nor, as Choice also argues, does Plaintiff allege that Choice is "any more active" in New Jersey than in other states.  *Chavez v. Dole Food Co.*, 796 F.3d 261, 270 (3d Cir. 2015), *vacated on other grounds* (Sept. 22, 2015) (*en banc*).

Plaintiff also argues that Choice "has availed itself of New Jersey's state and federal courts," docketing at least eight judgments totaling over $1 million between 2005 and 2021.  Pl. Br., Exh. A.  As Choice notes in opposition, however, the judgments cited by Plaintiff involved Choice's parent company.  Moreover, Plaintiff cites no support—nor could the Court locate any—for the proposition that pursuing unrelated actions in a state as a plaintiff establishes general jurisdiction there as a defendant.  Choice Reply 9.

In the alternative, Plaintiff urges the Court to find specific jurisdiction based on the underlying events.  Analyzing specific jurisdiction requires: (1) that defendant have "'purposefully directed' his activities" at the forum, *Burger King,* 471 U.S. at 472; (2) that plaintiff's claim "arise out of or relate to" at least one of those specific activities, *Helicopteros,* 466 U.S. at 414; and (3) the consideration of additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with 'fair play and substantial justice,'" *Burger King,* 471 U.S. at 476 (quoting *Int'l Shoe,* 326 U.S. at 320).  Specific jurisdiction is evaluated on a claim-by-claim basis.  *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

The thrust of Plaintiff's argument is that Choice "maintain[s] offices and numerous hotels" here. Pl. Br. 19. Specifically, fourteen Choice employees "work out of [New Jersey's] 'Home Office' in Trenton" or telecommute from their respective homes in New Jersey; Plaintiff conducted most business from his home office in Rockaway, New Jersey; Plaintiff's previous portfolio included Choice franchise owners in Princeton, New Jersey, with whom he had lunch in Princeton; and Plaintiff's new Ascend portfolio included current and potential New Jersey franchisors. *Id.* 19-20; Pl. Exh. B.; Pl. Decl. ¶¶ 3-4.

Choice argues that the Court cannot consider these facts, and disputes their accuracy. Choice Reply 11 (contending that the "Home Office" is merely an internal tax designation based on the Trenton location of the New Jersey Department of the Treasury, Division of Taxation). When evaluating a motion to dismiss for lack of personal jurisdiction, courts may consider facts outside of the complaint. *Patterson by Patterson v. F.B.I.,* 893 F.2d 595, 603-04 (3d Cir.1990). Even considering those facts, however, they do not justify the exercise of specific jurisdiction.[2]

There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Isaacs v. Arizona Bd. of Regents*, 608 F. App'x 70, 74 (3d Cir. 2015); *Burger King,* 471 U.S. at 475. Or phrased another way, "[t]here must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place *in the forum State* and is therefore subject to the State's regulation." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (emphasis added)).

---

[2] Because the Court accepts the allegations, it need not consider Plaintiff's request, in the alternative, for limited jurisdictional discovery.

The "fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *see Magill v. Elysian Glob. Corp.*, No. 120CV06742, 2021 WL 1221064, at *7 (D.N.J. Apr. 1, 2021) ("Plaintiff's physical location in New Jersey is the only factor that connects this dispute to New Jersey. Plaintiff's claims against defendants would be identical if he lived anywhere else in the world.") (*distinguishing Chadwick v. St. James Smokehouse, Inc.*, 2015 WL 1399121, at *1 (D.N.J. 2015) (finding that defendants "purposefully" availed themselves of New Jersey when they hired plaintiff to be a principal buyer, continuously relied upon the plaintiff to perform essential business functions from a New Jersey office, offered to purchase and ship office equipment to plaintiff in New Jersey, engaged in continuous business and email interactions for almost two years, and that New jersey had an interest in protecting its consumers from the allegedly mislabeled fish that defendants sold in New Jersey.)

Recall the nature of Plaintiff's claim: marital and/or familial discrimination based on his termination from a Maryland job. Or as Choice accurately summarizes, "Plaintiff was allegedly terminated from a Maryland-based position," by Choice employees outside of New Jersey, "allegedly because he would not move his family to Maryland." Choice Reply 12. Indeed, while this motion was pending, Plaintiff filed a state administrative civil rights claim in Maryland. DE 12. There is, in other words, little connective tissue between Plaintiff's claim and this forum, and therefore no basis for this Court to exercise specific personal jurisdiction.

Having declined jurisdiction, there remain two additional considerations. First, dismissal on jurisdictional grounds means that this Court will not consider the parties' remaining arguments

regarding dismissal of the Complaint for failure to state a claim. The Court will therefore deny that branch of Choice's motion without prejudice, reserving it for the proper forum.

The second consideration is that forum. Based on the dismissal for lack of personal jurisdiction, this Court must determine whether dismissal or transfer is appropriate. This issue is governed by 28 U.S.C. § 1631, which discusses transfer when there is "a want of jurisdiction." *See Chavez v. Dole Food Company, Inc.*, 836 F.3d 205, 224 (3d Cir. 2016). That provision states:

> [Where a] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court ... in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

Here, Plaintiff requested transfer to the District of Maryland, "where [Choice] has its principal place of business," if this Court declined jurisdiction. Pl. Br. 23. Given Choice's arguments regarding the applicability of Maryland law, transfer to the District of Maryland is appropriate.[3]

## IV.  CONCLUSION

For the reasons above, Defendant's motion is GRANTED IN PART. This Court declines to exercise personal jurisdiction and will transfer the matter to the District of Maryland. The remainder of the motion is DENIED WITHOUT PREJUDICE. An appropriate order follows.

Dated: September 19, 2022

_____
Evelyn Padin, U.S.D.J.

---

[3] Rockville, Maryland is the Montgomery County seat, and therefore the Court will direct transfer to the Southern Division in Greenbelt, Maryland.